**United States District Court**
**District of Massachusetts**

```
_____
                                 )
EUGENIE SAMUEL REICH,            )
         Plaintiff,              )
                                 )
     v.                          )     Civil Action No.
                                 )     09-10883-NMG
U.S. DEPARTMENT OF ENERGY, and   )
OAK RIDGE NATIONAL LABORATORY,   )
         Defendants.             )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Eugenie Samuel Reich ("Reich") seeks an order, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requiring defendants to produce an investigation report regarding allegations of research fraud and misconduct by certain scientists working at defendant Oak Ridge National Laboratory ("ORNL").

## I.   <u>Factual Background</u>

Reich is a freelance science writer and reporter and is currently a Knight Science Journalism Fellow at the Massachusetts Institute of Technology.  ORNL is owned primarily by the defendant United States Department of Energy ("the DOE") and performs various kinds of research and technical assistance for the DOE and other organizations.  ORNL has been managed by a private company, UT-Battelle, LLC ("UT-Battelle"), since April, 2000, pursuant to a contract with the DOE ("the ORNL Contract").

-1-

### A.    Pennycook Misconduct and Investigation

Dr. Stephen J. Pennycook was a prominent, DOE-funded electron microscopy researcher working at ORNL.  Reich alleges that, in May, 2006, two science journals, <u>Nature</u> and <u>Nature Physics</u>, advised Pennycook and ORNL of fraud allegations pertaining to research and publications by Pennycook and his group between 1993 and 2006.  The allegations of fraud and misconduct against Pennycook and others received considerable publicity, including articles in <u>The Boston Globe</u>, the <u>Knoxville News Sentinel</u> and <u>Nature</u>.  In November, 2006, Pennycook and two co-authors published a statement admitting that they treated critical data inconsistently in a 1993 paper published in <u>Nature</u>.

Under the Federal Policy on Research Misconduct, government contractors are required to investigate reports of fraud or misconduct and to disclose the results to the appropriate government agency.  The Policy requires that

> [w]hen an investigation is complete, the research institution will forward to the agency a copy of the evidentiary record, the investigative report, recommendations made to the institution's adjudicating official, and the subject's written response to the recommendations (if any).

65 FR 76260-76264, Dec. 6, 2000.  The DOE's policy, codified at 10 C.F.R. § 733, and the ORNL Contract are allegedly consistent with the Federal Policy on Research Misconduct.  In accordance with those policies, ORNL conducted an investigation into the allegations of research misconduct by Pennycook and his research

-2-

group relating to a 1993 <u>Nature</u> paper, a 2006 <u>Nature Physics</u> paper and some 2006 online papers ("the Pennycook Investigation").

The Pennycook Investigation was completed in July, 2006.  An independent committee concluded that Pennycook and his colleagues had not engaged in research misconduct and issued a report ("the Investigation Report").  On August 15, 2006, James Roberto, Director of Strategic Capabilities at ORNL and Senior Vice President of UT-Battelle ("Roberto"), emailed an unsolicited draft of the Investigation Report ("the Draft Report") to Patricia Dehmer, the then Associate Director of Basic Energy Services at the DOE Office of Science ("Dr. Dehmer").  The Draft Report was accompanied by a memorandum identifying it as a draft.

Subsequently, Roberto brought one copy of the ORNL Investigation Report to meetings at the DOE on December 27, 2006 and March 9, 2007.  The purpose of the meetings was to allow the DOE to review the process that the investigative panel had used to arrive at their findings.  After the meetings, the DOE confirmed that the investigation committee was objective and followed adequate procedures.  At the end of each meeting, Roberto retrieved the copy of the report.  Before the March 9, 2007 meeting, a final copy of the report, containing an addendum and appendices, ("the Final Report") was sent to Dr. Dehmer. Roberto retrieved that copy at the March 9, 2007 meeting,

however.  Since Reich filed her initial FOIA request, Dr. Dehmer has conducted three searches and found no documents in the DOE's possession, other than the emailed Draft Report, pertaining to the Pennycook Investigation.

## B.  Plaintiff's FOIA Requests to the DOE and ORNL

On December 8 and 9, 2006, Reich submitted FOIA requests to the DOE seeking copies of the Draft and Final Reports.  In a letter dated February 1, 2007, Amy Rothrock, a DOE ORNL Authorizing Official, closed without a right of appeal Reich's requests because Reich had already filed with DOE Headquarters a request "for the same records [which was] already being processed at DOE Headquarters".  In a letter dated June 6, 2007, Abel Lopez, Director of the DOE FOIA and Privacy Group, denied Plaintiff's request for the Investigation Report on the grounds that the record sought was "not an agency record."

Reich appealed the DOE's denial.  On November 13, 2007, the DOE Office of Hearings and Appeals ("OHA") found that the Investigation Report was an agency record because it was obtained by the DOE and was under the DOE's control at the time of Reich's FOIA request.  OHA also concluded that the DOE relied upon the report to determine that the investigation was conducted appropriately and that the copy of the report was retained and kept in DOE Office of Science ("DOE/OS") archives.  As such, OHA ordered the DOE/OS to release a copy of the Investigation Report

-4-

or justify its denial.

Despite OHA's Order, the DOE did not release any materials to Reich.  In a new determination letter dated January 15, 2008, Verlette L. Gatlin, Deputy Director of the DOE FOIA and Privacy Group, asserted for the first time that the Final Report and the Draft Report were not the same records because the Draft Report did not include Appendices A-I.  Gatlin asserted that the Draft Report was not an agency record for FOIA purposes and that, even if it were, it was being withheld under FOIA Exemptions 5 (because it was a draft) and 6 (because it contained personal information about ORNL employees being investigated).

In a letter dated September 21, 2008, Plaintiff appealed Gatlin's denial, requested that OHA "establish the relationship between the two reports definitively before ruling" and made other substantive arguments.  On October 28, 2008, OHA upheld the application of FOIA Exemptions 5 and 6 to the Draft Report, denied Plaintiff's appeal and granted rights of judicial review.  Reich states that, in so doing, OHA failed to respond to her substantive arguments, failed to establish definitively the relationship between the two reports before ruling and failed to order the segregation of exempt and non-exempt information.

In an effort to obtain the Draft and Final Reports, Reich now brings suit against the DOE and ORNL for wrongfully closing and denying her FOIA request and appeal.  She seeks an order

-5-

requiring the defendants to conduct an adequate search of all documents in their possession and control for all records responsive to her FOIA requests and to release to her copies of the Draft and Final Reports.  She also asks that the Court expedite this proceeding pursuant to 28 U.S.C. § 1657, award her reasonable costs and attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E) and grant such other and further relief as the Court deems just and proper.

## II.  **Procedural History**

Reich filed her complaint on May 27, 2009.  In November, 2009, Reich voluntarily dismissed her claims against UT-Battelle pursuant to Fed. R. Civ. P. 41(a)(1).  At a scheduling conference in March, 2010, the Court directed defense counsel to submit a report stating what materials responsive to the plaintiff's FOIA request were in, or have ever been within, the physical possession of the DOE.  Defense counsel subsequently submitted a status report stating that the Draft Report is the only record in the possession of the DOE that is responsive to Reich's FOIA request.

On April 7, 2010, the plaintiff filed an amended complaint and, on June, 28, 2010, the remaining defendants moved for summary judgment.  On December 15, 2010, the plaintiff filed an opposition to the defendants' motion for summary judgment and a motion for discovery pursuant to Fed. R. Civ. P. 56(f).

Plaintiff requests oral argument on her motion.  After three
extensions of time, the defendants opposed the motion for
discovery on February 25, 2011.

## III. <u>Defendants' Motion for Summary Judgment</u>

### A.    Summary Judgment Standard

The role of summary judgment is "to pierce the pleadings and
to assess the proof in order to see whether there is a genuine
need for trial."  <u>Mesnick</u> v. <u>Gen. Elec. Co.</u>, 950 F.2d 816, 822
(1st Cir. 1991) (quoting <u>Garside</u> v. <u>Osco Drug, Inc.</u>, 895 F.2d 46,
50 (1st Cir. 1990)).  The burden is upon the moving party to
show, based upon the pleadings, discovery and affidavits, "that
there is no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law."  Fed.
R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the
suit under the governing law."  <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>,
477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant
or unnecessary will not be counted."  <u>Id.</u>  A genuine issue of
material fact exists where the evidence with respect to the
material fact in dispute "is such that a reasonable jury could
return a verdict for the nonmoving party."  <u>Id.</u>

Once the moving party has satisfied its burden, the burden
shifts to the non-moving party to set forth specific facts
showing that there is a genuine, triable issue.  <u>Celotex Corp.</u> v.

_Catrett_, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor.  _O'Connor_ v. _Steeves_, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

**B.   Standard for FOIA Orders**

The FOIA gives district courts jurisdiction to order a federal agency to produce improperly withheld agency records.  5 U.S.C. § 552(a)(4)(B).  The agency bears the burden of justifying its withholding of documents.  _Id._; _Hayden_ v. _NSA_, 608 F.2d 1381, 1386 (D.C. Cir. 1979).  The Court is to determine the matter _de novo_.  5 U.S.C. § 552(a)(4)(B).

**C.   ORNL as a Defendant**

The defendants contend that ORNL is not a proper defendant because it is not a federal agency or even a legal entity.  Under the FOIA, the term "agency" includes

> any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency.

5 U.S.C. § 552(f).  For a private entity that is receiving federal funding to be considered a "Government controlled

-8-

corporation" and subject to FOIA disclosure requirements, there must be "extensive, detailed, and virtually day-to-day supervision" by the federal agency. <u>Forsham</u> v. <u>Harris</u>, 445 U.S. 169, 179-80 (1980). The federal supervision must be

> substantial . . . and not just the exercise of regulatory authority necessary to assure compliance with the goals of the federal grant.

<u>Id.</u> at 180 n.11. For example, in <u>Irwin Memorial Blood Bank of San Francisco Medical Society</u> v. <u>American National Red Cross</u>, the Ninth Circuit Court of Appeals held that the American National Red Cross was not a government-controlled corporation because 1) the United States did not appropriate funds for the Red Cross, 2) its employees were not considered United States employees and 3) government officials did not direct its everyday affairs. 640 F.2d 1051, 1056 (9th Cir. 1981) ("<u>Red Cross</u>"). In <u>Gilmore</u> v. <u>United States Department of Energy</u>, the United States District Court for the Northern District of California held that a private corporation was not government-controlled because 1) none of its employees received federal salaries or benefits, 2) day-to-day operations and hiring were privately managed and 3) the company retained complete autonomy in implementing policies for the company and conducting its business. 4 F. Supp. 2d 912, 919-20 (N.D. Cal. 1998).

In this case, the Court concludes, as a matter of law, that ORNL does not constitute a federal agency for FOIA purposes. In

his declaration, DOE employee and ORNL Site Office Manager, Johnny O. Moore, states that the DOE owns over 99% of the physical property at the ORNL site, directs and approves all major projects at ORNL and provides funding for carrying out all operations. Nevertheless, as in <u>Red Cross</u> and <u>Gilmore</u>, a private corporation, UT-Battelle, is responsible for the day-to-day operations of ORNL. Further, the employees at ORNL are hired and managed solely by UT-Battelle.

As in the <u>Red Cross</u> case, the fact that the DOE owns the physical property at ORNL is not dispositive. <u>See</u> 640 F.2d at 1056-57. Nor is the fact that the DOE is entitled, pursuant to the ORNL Contract and the Federal Policy on Research Misconduct, to receive notice of research misconduct allegations and a copy of any investigative report dispositive. <u>See</u> <u>Forsham</u>, 445 U.S. at 185-86. The Court is of the opinion that such oversight constitutes merely the "exercise of regulatory authority necessary to assure compliance with the goals of the federal grant" and not substantial involvement in daily operations. <u>See</u> <u>id.</u> at 180 n.11. The Court finds, therefore, that ORNL is not an appropriate defendant in this action and will allow the defendants' motion for summary judgment with respect to ORNL.

**D.  Whether the Requested Materials are Agency Records**

The DOE next maintains that the Draft and Final Reports are not agency records subject to FOIA. In order for a record to be

considered an "agency record", the agency must first create or obtain that record.  Forsham, 445 U.S. at 182.  Here, the DOE obtained a copy of the Draft Report by email on August 15, 2006 and the Final Report in hard copy on March 1, 2007.  Thus, it is clear that the DOE obtained both versions of the Investigation Report at some point.  Consequently, the Court will concentrate its inquiry on the second prerequisite characteristic of an agency record: agency control.

In order to be considered agency records, the requested materials must be under agency control at the time the FOIA request is made.  U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 145 (1989) ("Tax Analysts I").  Control means that the agency possessed the record "in the legitimate conduct of its official duties."  Id.  The agency's right to access or to obtain permanent custody, however, is not dispositive.  Forsham, 445 U.S. at 185-86.  Federal courts have looked at four factors to assess whether an agency exercises sufficient control over records:

(1) the intent of the document's creator to retain or relinquish control over the records;

(2) the ability of the agency to use and dispose of the record as it sees fit;

(3) the extent to which agency personnel have read or relied upon the document; and

(4) the degree to which the document was integrated into the agency's record system or files.

-11-

Consumer Fed'n of Am. v. Dep't of Agric., 455 F.3d 283, 288 n.7 (D.C. Cir. 2006) (internal citations omitted).  Courts consider the third and fourth factors to be the most important.  See, e.g., Judicial Watch, Inc. v. Fed. Housing Fin. Agency, No. 09-1537, 2010 WL 3833821, at *5 (D.D.C. Sept. 30, 2010); Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Homeland Sec., 527 F. Supp. 2d 76, 97-98 (D.D.C. 2007) ("Citizens for Responsibility") ("an agency's actual use of a document is often more probative than the agency's subjective intent.").

### 1.   Intent

With respect to the first factor, intent, the ORNL Contract provides that "records generated during the course of responding to allegations of research misconduct" are contractor-owned records and not "Government-owned records."  ORNL Contract, I.125, 970.5204-3(b)(1).  Nevertheless, the fact that Roberto emailed a copy of the Draft Report to Dr. Dehmer at the DOE/OS is evidence that he intended for her to retain a copy of that Draft for her records and perusal.  Thus, this factor weighs in favor of finding that the Draft Report is an agency record.

In contrast, with respect to the Final Report, Roberto demonstrated intent to retain control of and restrict the DOE's access to the Final Report by retrieving all copies at the end of each meeting, including the binder that was sent to Dr. Dehmer a few days before the March, 2007 meeting.  See Citizens for

Responsibility, 527 F. Supp. 2d at 92.  Thus, this factor favors a finding that the Final Report is not an agency record.

### 2.    Ability to Use and Dispose of the Document

In Tax Analysts v. U.S. Department of Justice, the United States District Court for the District of Columbia held that the electronic legal research database of the Department of Justice ("DOJ"), provided by West, was not a DOJ record because the contract between West and the DOJ greatly restricted DOJ's right to use, transfer and/or dispose of the data.  913 F. Supp. 599, 607 (D.D.C. 1996), aff'd without opinion, 107 F.3d 923 (D.C. Cir. 1997) ("Tax Analysts II").  Similarly, here, there was a notice on the front page of both the Draft and Final Reports stating that:

> This report contains confidential-business sensitive information belonging to UT-Battelle and is not to be copied or disclosed to others without written authorization from UT-Battelle.

The notice explicitly prohibits the DOE from distributing copies. Thus, as in Tax Analysts II, agency control is extremely limited here and the second factor weighs against a finding that the Draft and Final Reports are agency records.  Compare id., with Citizens for Responsibility, 527 F. Supp. 2d at 93-94 (finding that the second factor weighed in favor of the materials being considered agency records because there were no limitations on how the agency used or disposed of them).

###     3.    Extent to Which Agency Personnel Read or Relied Upon the Document

The third factor is arguably the most important in determining the agency's control over a document.  See Judicial Watch, Inc., 2010 WL 3833821, at *5 (the fact that no employee had read or relied on the files at issue weighed heavily in the Court's determination that the files were not agency records). For example, in Consumer Federation of America v. Department of Agriculture, the Court held that five employees' electronic appointment calenders stored on agency computers were agency records but the sixth was not.  455 F.3d at 292-93.  The distinguishing fact was that the calenders held to be agency records were distributed to other employees for planning purposes and the sixth was not.  Id.

Here, OHA found that the Investigation Report was an agency record because the DOE relied on it to determine that the investigation was conducted appropriately.  In her declaration, however, Dr. Dehmer attests that she only briefly scanned the emailed Draft Report and that her determination that UT-Battelle correctly conducted its investigation was not based on a review of the Investigation Report but rather on discussions in the two meetings.  She did not forward, print or distribute the Draft Report to anyone.

With respect to the Final Report, the DOE employees at the December 27, 2006 and March 9, 2007 meetings attest in their

-14-

declarations that they did not read it and that their discussions and findings at the meetings were based on Roberto's presentation of the investigation findings.  Thus, because only one agency employee skimmed the Draft Report and none relied upon either the Draft or Final Report, this factor weighs against a finding that either version is an agency record.  See Consumer Fed'n of Am., 455 F.3d at 293; Judicial Watch, Inc., 2010 WL 3833821, at *5.

Although there is a contradiction between OHA's finding and the declarations submitted by the defendant, the Court concludes that there is no genuine issue of material fact as to the extent to which the DOE employees read or relied on the Draft and Final Reports.  "[A]gencies do not litigate FOIA requests and therefore do not create a record suitable for review."  Young v. C.I.A., 972 F.2d 536, 539 (4th Cir. 1992).  In contrast, this Court has nine sworn declarations as well as the parties' briefs.  Thus, the finding of the OHA is not entitled to deference by this Court and, furthermore, it is difficult to imagine what other relevant information discovery would produce to shed light on this question.

### 4.   Degree to Which the Document was Integrated into the Agency's Record System or Files

With respect to the Final Report, the Court finds that it was never integrated into the DOE's record system or files.  At each meeting there was only one hard copy of the Report and none of the attendees even glanced at it.  Moreover, Dr. Dehmer's

temporary possession of the Final Report for less than one week
did not constitute integration into the DOE's record system.  See
Int'l Bhd. of Teamsters v. Nat'l Mediation Bd., 712 F.2d 1495,
1496 (D.C. Cir. 1983) ("transitory possession of the labels,
limited to the one-time, attach-and-post use required by the
court order, did not constitute 'control' of the labels by the
Board[.]").

The extent to which the Draft Report was integrated is a
closer question because it remains archived in the DOE's email
files.  Nonetheless, mere storage of a record at a federal agency
does not, by itself, make it an agency record.  See Kissinger v.
Reporter's Comm., 445 U.S. 136, 157 (1980) (holding that
Kissinger's White House records did not become part of the State
Department's files solely because they were stored in his
office); Citizens for Responsibility, 527 F. Supp. 2d at 96 ("An
agency's possession of an electronic document does not . . .
necessarily mean the file is integrated into the agency's file
system").  Instead, where an agency merely has possession of a
document, the Court must focus on the third factor: the extent to
which agency personnel read or relied upon the document.  See
Judicial Watch, Inc., 2010 WL 3833821, at *5.

Reich argues that summary judgment is inappropriate because
1) Roberto's declaration contains material inconsistencies with
respect to whether the Report was within the DOE's possession and

control during the pendency of Reich's FOIA requests to the DOE
and 2) Dr. Dehmer does not state in her declaration whether
anyone else in her office reviewed or did not review the binder
of materials during the week that she had possession of it.  The
Court finds those arguments unpersuasive.  First, there are no
material inconsistencies in Roberto's declaration.  Second, Dr.
Dehmer states that, for a "few days", the Final Report was on a
small table in her office and, to the best of her knowledge, "no
one read or reviewed the contents of the binder".

When viewed all together, the above factors lead the Court
to conclude that neither the Draft nor Final Reports are agency
records.  As a result, the Court lacks jurisdiction to order the
DOE to produce those records pursuant to the FOIA and the
defendants' motion for summary judgment will be allowed.

IV.  **Plaintiff's Motion for Discovery**

Reich moves, in the alternative, for the Court to deny or
stay its consideration of the defendants' motion for summary
judgment to permit her to undertake discovery necessary to oppose
effectively the defendants' motion.

A.  **Legal Standard**

The Court may grant a motion for discovery pursuant to Fed.
R. Civ. P. 56(d) if the moving party puts forward sufficient
evidence to show that the requested discovery is "necessary,
feasible, and can be outcome-determinative."  McGahey v. Harvard

-17-

Univ. Flexible Benefits Plan, 260 F.R.D. 10, 11 (D. Mass. 2009).
The FOIA imposes a stringent burden on parties moving for
discovery.  See Wheeler v. C.I.A., 271 F. Supp. 2d 132 (D.D.C.
2003).  Discovery in an FOIA action is limited and

> is directed at determining whether complete disclosure
> has been made, e.g., whether a thorough search for
> documents has taken place, whether withheld items are
> exempt from disclosure.

Giza v. Sec'y of Health, Educ. & Welfare, 628 F.2d 748, 751 (1st
Cir. 1980); Kyle v. U.S., Dep't of Health & Human Servs., Bureau
of Biologics, Food & Drug Admin., No. 86-3450-WF, 1989 WL 149990,
at *3 (D. Mass. Nov. 16, 1989).  Discovery in an FOIA action

> should be denied where an agency's declarations are
> reasonably detailed, submitted in good faith and the
> court is satisfied that no factual dispute remains.

Schrecker v. Dep't of Justice, 217 F. Supp. 2d 29, 35 (D.D.C.
2002).  If the agency's declarations are deficient, courts
generally will request a supplement before ordering discovery.
Wolf v. C.I.A., 569 F. Supp. 2d 1, 9 (D.D.C. 2008).

### B.  Application

Reich asserts that summary judgment is inappropriate at this
stage because there has been no discovery and there remain
several genuine issues of material fact, including the
reasonableness of the DOE's search for the records and whether
Roberto and Dr. Dehmer's inconsistent characterizations of the
emailed report as a "draft", "incomplete draft" and "final"

report are evidence of bad faith.  Reich argues that the declarations relied on by the defendants are conclusory and contain material inconsistencies.  Reich would like to depose Dr. Dehmer, Roberto and Moore and obtain written discovery. Specifically, she seeks information concerning 1) the defendants' possession, control, review, reliance upon and retention of copies of the Report, 2) UT-Battelle's intention to retain control of the report and 3) FOIA exemptions 4 and 7 which were not the subject of any prior administrative review.

The Court finds that the declarations submitted by the defendants are "reasonably detailed" and "submitted in good faith".  See Schrecker, 217 F. Supp. 2d at 35.  Declarants specifically addressed their possession, control, review, reliance upon and retention of copies of the Draft and Final Reports.  It is difficult to imagine what additional information Reich would extract from depositions of the declarants or from written discovery.  Reich has proffered no evidence that any of the declarants has misled the Court or had any motivation to do so.  Finally, the purported issues of fact that Reich denotes in her motion are actually questions of law.  In light of the parties' exhibits and the declarations submitted by the defendants, the Court is satisfied that no genuine issue of material fact remains with respect to whether the Draft and Final Reports are agency records.  See id.

## ORDER

In accordance with the foregoing,

1)   defendants' motion for summary judgment (Docket No.35) is **ALLOWED;** and

2)   plaintiff's motion for discovery pursuant to Fed. R. Civ. P. 56(f) (Docket No. 44) is **DENIED.**


**So ordered.**

                                    /s/ Nathaniel M. Gorton
                                    Nathaniel M. Gorton
                                    United States District Judge

Dated March 17, 2011